# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| ROBIN L. RAJSKI, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO.: 3:14-CV-1477-TLS |
|  | ) |  |
| CAROLYN W. COLVIN, | ) |  |
| Acting Commissioner of the Social | ) |  |
| Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

The Plaintiff, Robin L. Rajski, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits (DIB). In October 2010, the Plaintiff protectively filed an application for DIB, alleging disability beginning on September 11, 2010. The Plaintiff alleges multiple impairments, including: gastroparesis with delayed gastric emptying; GERD; bowel movement alterations with alternating constipation and diarrhea; fibromyalgia with chronic pain syndrome; lupus; antiphospholipid syndrome; irritable bowel syndrome; and emotional difficulties diagnosed as a moderate depressive disorder and dysthymic disorder. The Plaintiff is 48 years old, and has not worked, either full-time or part-time, since the alleged onset date of September 11, 2010.

An ALJ held a hearing on November 7, 2012, at which the Plaintiff—who was represented by an attorney—and a vocational expert both testified. On January 24, 2013, the ALJ found that the Plaintiff was not disabled. The Plaintiff requested review of the ALJ decision, and on April 24, 2014, the Appeals Council denied the Plaintiff's request for review. On April 30, 2014, the Plaintiff initiated this civil action for judicial review of the Commissioner's final decision. For the following reasons, the ALJ's decision is reversed and remanded for

proceedings consistent with this Opinion and Order.

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but

2

the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the Plaintiff was not engaged in SGA, so the ALJ moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The

3

ALJ determined that the Plaintiff had the following severe impairments: gastroparesis, fibromyalgia, chronic pain syndrome, GERD, and irritable bowel syndrome.

At step three, the ALJ concluded that the Plaintiff did not have an impairment, or combination of impairments that meets or medically equals the severity of one of the impairments listed by the Social Security Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Because the Plaintiff's impairment was found not to meet or equal a listed impairment, the ALJ was required, at step four, to examine the Plaintiff's residual functional capacity (RFC). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The ALJ concluded that the Plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b). Specifically, the ALJ found that the Plaintiff is able to occasionally lift up to 20 pounds, and frequently lift up to 10 pounds; stand and/or walk up to 6 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. However, the ALJ added that the Plaintiff cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. Additionally, the Plaintiff is limited to simple, routine, and repetitive tasks. She must also have ready access to a bathroom.

At the final step of the evaluation, the ALJ determined that, in light of the Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.

On appeal, the Plaintiff contends that, in determining her RFC, the ALJ (1) improperly discredited her testimony about her functional limitations; and (2) failed to provide sufficient

4

reasons for not giving controlling weight to the opinions of the Plaintiff's treating physicians. The Court will address each issue in turn.

**A.     Credibility**

An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft*, 539 F.3d at 678. However, the determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning. *Id.* To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)–(4) and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)).

**1.     *Testimony***

At the ALJ hearing on November 7, 2012, the Plaintiff testified that she lives with her husband and 14-year-old daughter. She described her daily experience with her multiple medical impairments, including gastroparesis, fibromyalgia, chronic pain syndrome, GERD, and irritable bowel syndrome. As to her gastrointestinal ("GI") issues, the Plaintiff said she suffers from daily incontinence, or a "tendency to have diarrhea on the spot with not much warning whatsoever." (R. 55.) The Plaintiff described her GI issues as follows:

5

> I may not have any loose bowels whatsoever for three weeks at a time, but in that time I will have watery bowels because of liquid. It just depends on what I'm putting into my body. But with the gastroparesis, if there is solid that can get through, it collects and so you don't have regular bowel movements. So I can go for like three weeks without having a bowel movement, and then it could take the entire day, off and on the toilet, to get everything out. So on a normal day . . . I'm in and out of the toilet . . . seven times. That's a good day."

(R. 68.) As a result, the Plaintiff said she "choose[s] not to . . . go anywhere anymore." (R. 55.) When asked why she was unable to continue her most recent employment as a patient care assistant, the Plaintiff testified that she "was having messes a couple of times an evening" while on shift.[1] (R. 55–56.)

Additionally, the Plaintiff described her daily issues with nausea and vomiting. According to the Plaintiff, "[a]ny little smell" causes her to vomit (R. 56), and therefore, she is unable to eat most foods. (*See* R. 57 ("[W]hen I go to eat, if I can eat . . . 99 percent of the things that I used to be able to eat I no longer can eat—so within 20 minutes I'm bringing it right back up violently. Or, if it's liquid, within 20 to 40 minutes coming out the other end violently.").) The Plaintiff said she vomits every morning, and that her vomiting spells—which may occur throughout the day—can last up to 40 minutes. The Plaintiff also described physical pain that allegedly results from her nausea and vomiting:

> [T]here's times that I may camp in the restroom with a towel and blanket . . . [because of the] cramping, nausea. It goes then into migraines because the vomiting is so violent, as well as the pain. The pain is not like a cramping. The pain is a hot, sharp knife. I sweat incredibly. I get this incredible, like burning feeling all over my body until I'm able to evacuate.

(R. 69.) The Plaintiff said she suffers from pain "pretty much everywhere that [she] ha[s] a

---

[1]The Plaintiff testified that her termination of employment was preceded by frequent absences from work, including an extended placement on unpaid leave due to her medical impairments.

6

joint," and on a scale of zero to ten, her pain level is a nine or ten, even with medication. (R. 58.) The Plaintiff testified to feeling physically weak, stating that she has difficulty lifting a gallon of milk.

Due to her medical impairments, the Plaintiff said she is unable to perform household chores (except for folding laundry), drive more than short distances, or maintain daily grooming functions. When asked if she could perform an eight-hour shift in a sit-down job, the Plaintiff responded "[a]bsolutely not . . . if I went, I'd have to leave early, if I could get there at all. And there's no way I could sit there for eight hours." (R. 65.)

At the hearing, the ALJ posed the following hypothetical to the vocational expert (VE):

> Please assume an individual the same age, education, and work experience as the [Plaintiff]. This individual would be limited to light work; no more than occasional climbing of ramps and stairs; no ropes, ladders or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. And I'm going to add also limited to simple, routine repetitive tasks and would require ready access to bathrooms, and I'm going to define ready access to bathrooms as being able to reach the bathroom within three minutes. [Are any jobs available for the Plaintiff?]

(R. 73.) The VE responded that, although no previous work is available for the Plaintiff, work is available as a housekeeping cleaner, mail clerk, and shipping and receiving clerk. The ALJ then asked whether, under the same hypothetical, any jobs are available if the Plaintiff is "off task 20 percent of the work day," to which the VE responded, "No." (R. 74.)

**2.    *ALJ's Credibility Determination***

In assessing the credibility of the Plaintiff's statements, the ALJ identified the following as factors he would consider: the plaintiff's daily activities; the location, duration, frequency, and intensity of her pain and other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the plaintiff takes

7

or has taken to alleviate pain or other symptoms; treatment, other than medical, that the plaintiff receives or has received for relief of pain or other symptoms; any measures other than treatment the plaintiff uses or has used to relieve pain or other symptoms; and any other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. (R. 30.) (citing SSR 96-7p; 20 C.F.R. §§ 404.1592(c) & 416.929(c)).

The ALJ ultimately determined that, while the Plaintiff's multiple medical impairments could reasonably be expected to cause her alleged symptoms, her testimony as to the intensity, persistence, and limiting effects of such symptoms is "not entirely credible" (R. 28), and that her testimony was "disproportionate" to the findings in the record. (R. 30.) The ALJ placed particular emphasis on evidence related to the Plaintiff's daily activities and past employment, including: statements made (1) by the Plaintiff in her function reports, dated December 10, 2010, and April 29, 2011; (2) by the Plaintiff's husband in his third-party function report, dated April 15, 2011; (3) by the Plaintiff's mother in her third-party function report, dated December 6, 2010; and (4) by the Plaintiff's former employer in an employee work activity questionnaire, dated December 13, 2010. The ALJ found that, despite the Plaintiff's impairments, the above statements show that "she is able to perform her activities of daily living . . . including preparing meals, cooking, cleaning, shopping, doing laundry and maintaining her personal hygiene." (R. 30.) And in light of her "ability to perform these tasks with her GI problems," the Plaintiff is capable of working "as long as she has ready access to a bathroom." (R. 30–31.) The ALJ also found that the Plaintiff's testimony is inconsistent with other objective medical evidence.

After a critical review of the evidence, the Court finds several problems with the ALJ's analysis. First, the ALJ asserts that "the record does not establish that [the Plaintiff's] symptoms

8

result in limitations severe enough to preclude [her] from working altogether when not abusing drugs or alcohol." (R. 30.) As the Appeals Council noted in its decision, the ALJ's reference to the Plaintiff's abuse of drugs or alcohol is unfounded. (*See also* R. 517 (the Plaintiff's medical history only shows that she is a former tobacco user and an occasional consumer of alcohol).) The ALJ also stated that "[w]hile working, [the Plaintiff] wished to change to the night shift so she could care for her daughter shortly before she was terminated for excessive absences . . . which may explain why she stopped working and why she was frequently absent." (R. 30.) Again, this statement lacks evidentiary support, as the ALJ failed to cite any objective medical evidence suggesting that the Plaintiff's work schedule—and not her multiple medical impairments—is the cause of her excessive absences. Absent evidentiary support, the ALJ's explanation amounts to nothing more than speculation. *White ex. rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence.")

But of greater note, the Court takes issue with the ALJ's analysis related to the Plaintiff's daily activities. The Seventh Circuit has "cautioned that a person's ability to perform daily activities, especially if th[ey] can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Although "it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, SSR 96–7p, at *3," it must be "done with care." *Id.* Here, the ALJ's description of the Plaintiff's abilities—namely, his assessment that the Plaintiff "is able to perform her activities of daily living . . . including preparing meals, cooking, cleaning, shopping, doing laundry and maintaining her personal hygiene" (R. 30)—is a distortion of the record. In her 2011

9

function report, the Plaintiff stated that, due to her nausea, she is "physically too weak" to perform most household chores, as her chores are limited to folding laundry, emptying the dishwasher, and occasional vacuuming, while all other chores are handled by family members. (R. 233.) The reports also contain the Plaintiff's statements that her nausea, which normally takes 90–120 minutes to subside, results in daily vomiting. According to the Plaintiff, "[o]n days when the nausea is too bad . . . [she] is unable to leave the bedroom/bathroom." (R. 185.) As a result, she will allegedly sleep for 10–12 hours and engage in "[n]o activity other than leaning over [the] side of the bed to vomit in [a] bucket." (*Id.*) As to cooking, the Plaintiff reported in 2010 that she will only prepare three meals on a good week, and will prepare no meals on a bad week; and in 2011, she reported that she "can no longer prepare full meals for [her] family." (R. 232.) In regards to shopping, the Plaintiff reported in 2010 that she engages in "light shopping as [she] is able" (R. 187); but in 2011, she reported that she can no longer grocery shop or run errands. The Plaintiff also stated that she is unable to manage her bank accounts or pay her bills.

The Plaintiff's statements are similar to those presented by her husband, who noted in his 2010 third-party function report that he spends little time with the Plaintiff because "she has been too sick to leave home/bathroom." (R. 222.) He said that, although the Plaintiff attempts to take care of the daily needs of her daughter and the household, she is unable to perform errands or chores because of her nausea and physical pain. He also said the Plaintiff has stopped cooking "almost completely "(R. 224), has stopped shopping, and is unable to manage her bank accounts or pay her bills.

As the above statements demonstrate, the ALJ's credibility analysis relies, in part, on an inaccurate depiction of the administrative record. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th

Cir. 2010) (noting that the ALJ has an obligation to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding). While the Court is mindful that an ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006), the ALJ is still required to "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks omitted); SSR 96-7p (an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements"). The Court further notes that, even if the ALJ determines that the Plaintiff is able to perform a limited range of daily activities, such a finding "does not necessarily translate into an ability to work full-time." *Roddy*, 705 F.3d at 639; *see also Wright v. Sullivan*, 900 F.2d 675, 682 (3d Cir. 1990) ("sporadic or transitory activity does not disprove disability") (internal quotation marks and citation omitted); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (to be found unable to engage in substantial gainful activity the claimant need not "vegetate in a dark room" or be a "total basket case") (internal quotation marks and citation omitted).

Accordingly, on remand, the ALJ must assess the Plaintiff's credibility by presenting a complete and accurate evidentiary record. And if applicable, the ALJ must clearly articulate any inconsistencies between the Plaintiff's daily activities, as fully described in the 2010 and 2011 function reports, and the Plaintiff's testimony at the 2012 hearing; while providing specific reasons as to why the Plaintiff's daily activities translate into an ability to engage in substantial gainful work.

**B.     Opinions of Treating Physicians**

The Plaintiff also contends that the ALJ erred by assigning "little weight" to the opinions of her treating physicians, Drs. Christopher Hall (family practice physician) and Zuhnair Yaseen (gastroenterologist). (R. 29.)

If a treating physician's opinion on "the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the [ALJ] must give it controlling weight." SSR 96-8p; 20 C.F.R. § 404.1527(c)(2); *Roddy*, 705 F.3d at 636. The regulations provide that more weight is generally given to the opinion of treating sources who have (1) examined a claimant, (2) treated a claimant frequently and for an extended period of time, (3) specialized in treating the claimant's condition, (4) performed appropriate diagnostic tests on the claimant, and (5) offered opinions that are consistent with objective medical evidence and the record as a whole. § 404.1527(c)(2)(i), (ii). If the ALJ does not give a treating source's opinion controlling weight, the ALJ must consider various factors to determine the weight to assign the opinion. These include the length, nature, and extent of the claimant's relationship with the treating physician; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. § 404.1527(c). Thus, an ALJ may discount a treating physician's medical opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). The ALJ must give "good reasons" to support the weight he ultimately assigns to the treating physician's opinion. § 404.1527(c).

The record shows that both Dr. Hall and Dr. Yaseen opined that the Plaintiff's medical

impairments impacted her ability to maintain employment. In a letter dated November 4, 2010, Dr. Hall—who first examined the Plaintiff in April 2010—stated that "[d]ue to [the Plaintiff's] multiple medical problems she is unable to hold down any employment at this time." (R. 502.) Similarly, Dr. Yaseen—who first examined the Plaintiff in May 2010—submitted a letter, dated November 23, 2010, in which he states:

> The [Plaintiff] has been diagnosed with gastroparesis. . . . Her symptoms were associated . . . with generalized weakness, lethargy, and malaise. She also has not been able to sleep very well. The above complaints, although nonspecific, have interfered with the [Plaintiff's] ability to perform her normal duties and functions at work.

(R. 503.) In a second letter, dated April 10, 2011, Dr. Yaseen noted that the Plaintiff was diagnosed with "chronic nausea and vomiting for several years," along with irritable bowel syndrome and chronic diarrhea. (R. 639.) Dr. Yaseen concluded with the following:

> The [Plaintiff] indicated to us on various visits that her GI complaints made her weak. This, in turn, made [it] difficult [for her] to concentrate and do her job adequately. The patient also indicated that her lack of sleep and also GI complaints made her [unable] to eat and not be able to go to work because of her diarrhea; that also interfered with her job. From this point of view of a gastrointestinal evaluation, the patient indicated that those above symptoms interfered with her ability to perform her duties.

(*Id.*)

The Commissioner argues that the opinions of Drs. Hall and Yaseen are undeserving of "any special significance" because they represent ultimate findings as to the Plaintiff's ability to work, and that such findings are reserved for the Commissioner. (Gov't Br. 4.) Certainly, the Plaintiff "is not entitled to benefits merely because her treating physician said she is disabled or unable to work." *Rogers v. Barnhart*, 446 F. Supp. 2d 828, 853 (N.D. Ill. 2006) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). Not only is the determination of disability reserved to the Commissioner, "once contrary, competent medical evidence contradicting that of

the treating physician is introduced the ALJ no longer gives primacy to the treating physician's opinions and the treating physician's evidence 'is just one more piece of evidence for the administrative law judge to weigh.'" *Id.* (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)).

Here, the ALJ found that the opinions of Drs. Hall and Yaseen are contradicted by the Plaintiff's "relatively normal examination findings," which according to the ALJ, do not warrant the "extreme restriction[s]" articulated by Drs. Hall and Yaseen. (R. 29.) The ALJ also noted that their opinions fail to specify what the Plaintiff's limitations are. In contrast, the ALJ granted "great weight" to the opinion of the state agency medical consultant, who determined that the Plaintiff was limited to light exertional work with occasional postural limitations. (R. 30.)

Again, the Court notes several problems with the ALJ's analysis. First, the ALJ states that the opinions of Drs. Hall and Yaseen are inconsistent with the record because the Plaintiff "wished to change her work shifts to take care of her daughter during the day, which may explain her absences and her fatigue as she was not getting enough sleep." (*Id.*) As discussed above, the ALJ made the same unsupported assertion in his credibility analysis. And without a citation to evidence suggesting that the Plaintiff's work schedule—and not her multiple medical impairments—is the cause of her fatigue, the ALJ is engaging in mere speculation, which is "no substitute for evidence." *White ex. rel. Smith*, 167 F.3d at 375.

Additionally, in determining that the opinions of Drs. Hall and Yaseen are inconsistent with the Plaintiff's "relatively normal examination findings," the ALJ offers an inadequate discussion of the relevant medical evidence that appeared to represent a basis for the opinions of Drs. Hall and Yaseen. For instance, the record shows that beginning in October 2009, the

Plaintiff complained of diarrhea, vomiting, and nausea. In May 2010, the Plaintiff tested positive for delayed gastric emptying; and that same month, Dr. Hall reported the Plaintiff's complaints of uncontrolled vomiting, nausea, alternating constipation and diarrhea, and abdominal pain. Upon Dr. Hall's referral, Dr. Yaseen examined the Plaintiff in May 2010, and provided the following assessment:

> [The Plaintiff] has been complaining of a variety of GI complaints. . . . [The Plaintiff] is having severe nausea and vomiting. She is unable to keep anything down. She is also having diarrhea. The diarrhea is more chronic. The patient was given different medications with little relief. The patient is unable to work. She is worried about her symptoms. [The Plaintiff] has abdominal pain in the right lower quadrant that shoots down into her legs.

(R. 467.) Following Dr. Yaseen's examination, an esophagogastroduodenoscopy was performed on the Plaintiff, which indicated a small sliding hiatal hernia with mild gastritis. Moreover, a gastric emptying study performed on May 29, 2010, confirmed a diagnosis of gastroparesis. On September 26, 2010, after a follow-up visit, Dr. Hall reported the Plaintiff's "intermittent flare ups" of gastroparesis, which result in "significant pain, nausea and occasional accidents" that prevent the Plaintiff from working. (R. 403.) Furthermore, Dr. Hall's records from October 2010 indicate that the Plaintiff is "[s]till having significant GI symptoms," including nausea, and vomiting. (R. 401–02.)

Although the ALJ acknowledges the Plaintiff's diagnosis of delayed gastric emptying and gastroparesis, he discredits the opinions of Drs. Hall and Yaseen by relying almost exclusively on the physical consultative examinations by Dr. Wa'el Bakash (internal medicine physician) and the DDS state agency consultative examiner. Specifically, he finds significant Dr. Bakash's determination that the Plaintiff could grasp, manipulate, and carry objects in both hands; perform repeated movements with both feet; bend over and squat without restrictions; and sit, stand, and

15

walk normally. He also finds significant the state examiner's determination that the Plaintiff could perform light exertional work with occasional postural limitations. However, by relying almost exclusively on the above physical consultative examinations—neither of which includes findings related to the Plaintiff's GI issues or their potential impact on the Plaintiff's ability to engage in substantial work[2]—the ALJ has failed to address objective medical evidence that appears to have formed a basis for the opinions of Drs. Hall and Yaseen. More specifically, the ALJ has failed to clearly articulate inconsistencies between the opinions of the treating physicians and other evidence in the record.

Moreover, in finding that the treating sources' opinions were entitled to "limited weight," the ALJ did not address several of the factors set forth in 20 C.F.R. § 404.1527(c)(2). *See, e.g., Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (reversing where the ALJ did not explicitly address the checklist of factors, the proper consideration of which may have caused the ALJ to accord greater weight to the doctor's opinion); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision for failing to address the "required checklist of factors" and remanding with instructions to afford the plaintiff's treating psychiatrist's opinion controlling weight); *Tenhove v. Colvin*, 927 F. Supp. 2d 557, 571 (E.D. Wis. 2013) (criticizing ALJ's failure to discuss regulatory factors and remanding for reconsideration of weight to be afforded to treating physician's opinion); *Fuller v. Astrue*, No. 12 C 0171, 2013 WL 617073, at *12 (N.D. Ill. Feb. 19, 2013) (remanding to consider weight afforded to treating physician's opinion with instruction to explicitly consider the factors set forth in 20 C.F.R. § 404.1527(c)(2)

---

[2]As to the opinions of Drs. Hall and Yaseen, the state examiner, without providing any additional detail, provides the following: "Drs. Yaseen and Hall wrote letters indicating that the [Plaintiff's] medical issues prevent her from working currently. The [consultative examiner] report does not support this level of severity." (R. 631.)

16

if the ALJ determined that treating physician's opinion was not entitled to controlling weight); *Johnson v. Astrue*, No. 10 C 7848, 2013 WL 453186, at *11 (N.D. Ill. Feb. 6, 2013) (same). The Court finds that a more thorough analysis of the § 404.1527(c)(2) factors is necessary—including consideration of the treating physicians' specialty and treatment relationship with the Plaintiff—so that the Court may better understand the ALJ's rationale for discounting the opinions of Drs. Hall and Yaseen.

In sum, the ALJ has not bridged the gap between the evidence and the weight he afforded the treating physicians' opinions. On remand, the ALJ must provide an adequate discussion of the objective medical evidence related to the Plaintiff's GI symptoms, while clearly articulating how he factored such evidence when discounting the opinions of the Plaintiff's treating physicians. And if applicable, the ALJ must also clearly articulate how relevant employment accommodations—e.g., ready access to a bathroom—allow the Plaintiff to engage in substantial gainful work, despite the Plaintiff's documented GI symptoms.

## CONCLUSION

For the reasons stated above, the decision of the ALJ is REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED on September 30, 2015.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION